[L. A. No. 11120. In Bank.—May 2, 1929.]

COUNTY OF VENTURA, Appellant, v. JASPER BARRY et al., Respondents.

James P. Hollingsworth, District Attorney, Don R. Holt, Chief Deputy District Attorney, and Blackstock & Rogers for Appellant.

Clarke & Bowker for Respondents.

Z. B. West and Vernon W. Lilley, *Amici Curiae.*

LANGDON, J.—This is an appeal by the County of Ventura from a judgment sustaining demurrers without leave to

amend to the first and second causes of action set forth in the county's complaint and from a judgment in favor of respondent Barry as to the third cause of action set forth in the county's complaint. Separate appeals were taken from these judgments, but upon stipulation they were consolidated in this court.

The first cause of action is based upon the theory that respondent Barry wholly failed, refused and neglected to take his oath of office, as prescribed by section 904 of the Political Code. The form of oath prescribed by said section leaves a blank line for the insertion of the name of the office. Respondent Barry signed and filed an oath which was in the exact language of the form prescribed by section 904 of the Political Code, but the blank in the form was not filled in. The oath, however, is preceded on the same sheet of paper by the certificate of election, signed by the county clerk, from which it appears that the person signing the oath had been elected to the office of county assessor. We are of the opinion that there was a substantial compliance with the statute under the rulings in the cases of *State ex rel. Young v. Ladeen,* 104 Minn. 252 [16 L. R. A. (N. S.) 1058, 116 N. W. 486]; *People v. Perkins,* 85 Cal. 509, 514 [26 Pac. 245].

We think the demurrer to the first cause of action was properly sustained.

The second cause of action was based upon the theory that the respondent, while acting as assessor of the County of Ventura, collected and received certain sums of money as taxes in the said county; that the sums of money so received and collected by the respondent were collected and received by him as taxes on real property situated in the County of Ventura and consisting entirely of the possession of, the claim to, or right to the possession of land, together with chattels real and leasehold interests in and to real property, together with all rights and privileges appearing thereto, and improvements thereon, as defined in section 3617 of the Political Code of the state of California, and that the said taxes so collected and received were collected and received by the said Jasper Barry under and by virtue of section 3820 of the Political Code of this state. It is further alleged that the amount of taxes so collected amounted to $990,736.76, from which the respondent deducted six per

cent thereof, amounting to $57,792.99, which he failed to pay over and deliver to the county treasurer of the County of Ventura, and further alleging that demand was made of respondent for the said sum of $57,792.99, but that the respondent failed to pay the same over to the county, etc.

The issues raised here are twofold: (1) Whether taxes upon "possession of, claim to or right to the possession of land, together with chattels real and leasehold interests in and to real property, together with all rights and privileges appertaining thereto and improvements thereon," are taxes upon real estate to be assessed, levied and collected in the same manner as taxes upon other real estate mentioned in section 3617 of the Political Code, or whether such taxes are to be collected under sections 3820, 3821 and 3822 of the Political Code; (2) If such taxes are collectible under the latter sections, whether they lose their identity as taxes upon real estate as defined by section 3617 of the Political Code, and become subject to six per cent compensation for the assessor under the provisions of section 4290 of the Political Code, allowing him six per cent of "all personal property taxes."

It is insisted by respondents that the questions are concluded in this state by the case of *Mohawk Oil Co.* v. *Hopkins*, 196 Cal. 148 [236 Pac. 133]. In that case an injunction was sought by the plaintiff, a corporation, owner and holder of certain oil and gas leases, to prevent the assessor from assessing and collecting taxes upon such interests under the provisions of section 3820 et seq. The claim was that such possessory rights and leasehold interests were real property and that whatever taxes were to be imposed upon them should be assessed, levied and collected in the same manner as taxes upon other real estate. It was alleged that the defendant assessor was claiming the right to demand and collect county taxes upon the plaintiff's possessory rights on oil and gas leases upon said lands and to have the same paid in conformity with section 3820 of the Political Code, and in default of the payment, to have the possessory and leasehold rights seized and sold under the provisions of sections 3821 and 3822 of the said code. A general demurrer was sustained without leave to amend and upon appeal it was held that the nature and character of the property generally denominated as an oil and gas lease is such that it

must be subjected to the method of assessment and collection of taxes as provided by section 3820 of the Political Code. The court used the following language: "The present contention of the plaintiff and appellant herein is that since possessory rights and leasehold interests in lands are real estate under section 3617 of the Political Code as interpreted in the foregoing cases, no reason exists for the application to these forms of real estate of a different principle and method of assessment and of the payment of taxes than that which under the general laws relating to taxation of real property is provided for the assessment and collection of the taxes upon the land out of which these lesser interests therein have been carved. This contention was answered in part by this court in the case of *Graciosa Oil Co.* v. *Santa Barbara* [155 Cal. 140, 20 L. R. A. (N. S.) 211, 99 Pac. 483], *supra*, wherein Mr. Justice Shaw pointed out certain essential differences between possessory rights under leases for the extraction of oil and like substances from the land and ordinary possessory interests under leases for the purpose of usufructuary production which import to the former a character resembling that of a servitude or chattel real. There are yet other differences easily to be discerned. The operations of lessees under oil leases contemplate the erection of derricks and other structures of an impermanent character and the sinking of deep wells at large expense, but which derive their main value not from the expenditure necessary to their creation but from the oil content of the land into which they penetrate. If oil or other mineral substance or essence is found and extracted, these immediately become personal property upon their severance from the soil, the value of which is to be realized only by their removal from the place of their extraction to near or distant markets."

The case proceeds upon the theory that oil leases are essentially different from ordinary agricultural leases with reference to the incidents to be considered by the assessor, and it decides only that a tax upon oil leases is collectible under section 3820 et seq. of the Political Code.

The pleading of the second count in the instant case does not mention oil leases, but refers to "possession of, claim to, or right to possession of land, together with chattels real and leasehold interests in and to real property." We think, therefore, it was not subject to demurrer under the

rule of the Mohawk Oil case and other cases involving oil leases, even though we were to concede, which we do not, that taxes collected upon such leases are subject to the six per cent charge of the assessor.

However, the record indicates a disposition on the part of counsel for all parties to have the case decided upon its merits and the omission to plead that the possessory rights in land involved here were oil leases is unimportant, because in the offer of proof under the third count it is admitted that the leases were oil leases, and whether they were oil or agricultural leases becomes immaterial in view of our conclusion as to the law of this case.

The third cause of action was to quiet title to personal property. It was alleged that the county was the owner and entitled to the possession of that certain personal property consisting of the said sum of $57,792.99 on deposit in the defendant bank, and that the respondent Barry claimed some right, estate or interest in and to said sum of money adverse to the county, and it was further alleged that the claim of Barry was without right, etc. The general demurrer interposed to this cause of action was overruled. An answer was filed in which, among other defenses, Barry claimed the money in controversy as representing six per cent of the personal property tax collected by him as such assessor as authorized by section 3820 of the Political Code.

Upon the trial the county, in support of the allegations contained in its third cause of action, offered to prove the matters pleaded in its first and second causes of action. The offer was in the language of the pleading, and to the effect that the defendant had collected certain moneys on personal and real property, and that a specified portion of it was collected upon possessory rights and leasehold interests in land, under section 3820 of the Political Code. The attorneys, in stipulating as to what plaintiff's proof would show, agreed that the taxes in dispute are taxes on leasehold interests in and to real property consisting of oil leases or leases in oil producing territory of the county. The offer of proof was objected to on the ground that it showed that the taxes were all collected under and by virtue of section 3820 of the Political Code. It was conceded that the facts offered could be proved, but it was objected that they were incompetent, irrelevant and immaterial.

But it is the contention of appellant that even though it be admitted that the tax was properly collected under the provisions of section 3820 et seq. by the procedure employed for the collection of taxes upon personal property, nevertheless the compensation of six per cent allowed to the assessor does not apply to such taxes which are assessed and collected against property which is classified by section 3617 of the Political Code as real property. This last point is a novel one in this state. The Mohawk Oil case merely decides that taxes upon oil leases may be collected under the provisions of section 3820 of the Political Code, which reads: "The Assessor must collect the taxes on *all property* when, in his opinion, said taxes are not a lien upon real property sufficient to secure the payment of the taxes." The succeeding sections provide for seizure and sale in cases covered by section 3820.

But let us return to a consideration of section 3617 of the Political Code, relied upon by appellant. It is contained in chapter II of part 3, title 9, on Revenue. Chapter II deals with definitions and section 3617 therein declares that real estate includes: "The possession of, claim to, ownership of, or right to the possession of land," etc. Clearly, the case pleaded and the offer of proof are within the above definition of real estate. We then turn to section 4290 of the Political Code for the law with reference to the compensation of the assessor, at the time the collections in question were made. We find: "The salaries and fees provided in this title shall be in full compensation for all services of every kind and description rendered by the officers named in this title either as officers or *ex-officio* officers, their deputies and assistants. . . .

"Assessor. Provided and except, that the Assessor shall be entitled to receive and retain for his own use, unless in this title otherwise provided, six per cent. of *personal property tax* collected by him, as authorized by section 3820. . . ."

Appellant's position is well stated in its own language, as follows: "If a tax on leasehold interests and possessory rights as defined in section 3617 of the Political Code is a personal property tax as defined in section 4290 of the Political Code, then we concede that respondent Barry is entitled to receive and retain six per cent. of said taxes so collected by him. Upon the other hand, if the definitions as set forth in section

3617 of the Political Code are to be followed and adhered to in the decision of this question, then it must be held that a tax on leasehold interests and possessory rights is a tax on real estate as defined by section 3617 of the Political Code and that, regardless of the manner or method in which a tax on leasehold interests or possessory rights is collected, an assessor making this collection would not be entitled to receive and retain for his own use six per cent. thereof, for the reason that he is collecting a tax on real estate and not on personal property.''

In the case of *People* v. *Smith*, 123 Cal. 70 [55 Pac. 765], it is said: ''Section 3617 of the Political Code defines the terms used in the assessment of property for the purposes of taxation, and these definitions must control in matters relating to taxation, whether they conform to the definitions used in the law for other purposes or not.'' And again, in *Western Union Tel. Co.* v. *Modesto Irr. Co.*, 149 Cal. 662 [9 Ann. Cas. 1190, 87 Pac. 190], it was said: ''Moreover, we think that, for the purpose of the revenue to the district, the definition of real property and personal property in the general revenue and taxation laws of the State, as found in the Political Code, must prevail.''

In the case of *San Pedro, L. A. & S. L. R. Co.* v. *City of Los Angeles*, 180 Cal. 18 [179 Pac. 393], it was said: ''If, then, the legislature had not provided any mode for the assessment of leasehold estates, it might well be said, as was said in the former opinion, that such an estate is not 'property for the purposes of taxation' under our fiscal laws. But there does not appear to be any such deficiency in our revenue laws. Section 3617 of the Political Code declares the term 'property' includes 'all matters and things real, personal and mixed, capable of private ownership,' and that the term 'real estate' includes 'the possession of, claim to, ownership of, or rights to the possession of land.' A leasehold estate carries a right to the possession of the land leased. (Civ. Code, sec. 819.) It is, therefore, real property within the above definition. Other sections of the Political Code provide for the listing of real property, description and valuation thereof, and contain a complete scheme for the assessment of the property, and the levy and collection of the taxes. This scheme is as readily adaptable to an estate for years as to a freehold estate.''

█ We conclude that section 3820 of the Political Code, while providing a special method and manner for the collection of the tax upon all property when in the opinion of the assessor said tax is not a lien upon real property, does not extend, either expressly or impliedly, to the assessor, the right to receive and retain six per cent of the taxes collected by him upon such property as has been classified by section 3617 as real estate. It follows that the judgment for defendant Barry upon the third cause of action, in which the county sought to quiet its title to the money in question, was erroneous, as was also the judgment sustaining the demurrer without leave to amend upon the second cause of action. Both causes of action involve the same legal principles. Such judgments are reversed.

The judgment in favor of defendants, upon plaintiff's alleged first cause of action, is affirmed.

Curtis, J., Seawell, J., Richards, J., Shenk, J., and Waste, C. J., concurred.

PRESTON, J., Dissenting.—I dissent from the conclusion announced above because I cannot accept the construction given by the court to that portion of section 4290 of the Political Code which refers to the compensation of county assessors for extra work done by them under section 3820 of the Political Code, which said work is not within their general duties as defined by section 4125 of the Political Code. The paragraph in question reads:

"Provided and except, that the assessor shall be entitled to receive and retain for his own use, unless in this title otherwise provided, six per cent of personal property tax collected by him, as authorized by section three thousand eight hundred twenty . . . "

Political Code, section 3820, reads: "The assessor must collect the taxes on all property when, in his opinion, said taxes are not a lien upon real property sufficient to secure the payment of the taxes. The taxes on all assessments of possession of, claim to, or right to the possession of land and the taxes on taxable improvements located upon land exempt from taxation, shall be immediately due and payable upon assessment and shall be collected by the assessor as provided in part III, title IX, chapter VIII of this code, . . . "

It is held in the majority opinion that the words "personal property" as found in said first quoted section must be denied their ordinary meaning and be limited by the special provisions found in section 3617 of the Political Code, relating to taxation, which said section in this connection reads: "Definitions. Whenever the terms mentioned in this section are employed in this act, they are employed in the senses hereafter affixed to them: . . . The term 'real estate' includes: 1. The possession of, claim to, ownership of, or right to the possession of land. . . . "

In other words, the holding is that oil leases, and all such property as possession of, claim to, or right to the possession of land, shall not be classified as personal property under section 4290. But at the outset we are met with the fact that, under said section 3820, the assessor must assess and collect taxes upon this species of property as though it were personal property. It is only upon the theory that it is in legal effect personal property that the summary method of assessment and collection of taxes thereon may be lawfully applied. This is the undeniable construction of the opinion of this court in the case of *Mohawk Oil Co.* v. *Hopkins*, 196 Cal. 148 [236 Pac. 133].

The construction given said section 3820 in the Mohawk Oil Co. case and the construction here given it by our court cannot be harmonized. It was because oil leases partook of the nature of personalty rather than realty that they were classified as personalty and this classification justified under the constitution, article IV, section 25, which prohibits special laws for the assessment or collection of taxes. If this class of property is not personal property, then so much of said section as provides for the assessment and collection of taxes upon it is void under said provision of the constitution. It is thus seen that there is a lack of harmony between sections 3617 and 3820.

The truth is that this kind of property is classified as personal property in certain instances, even in the tax laws of the states themselves. Observe article XIII, section 9a, of the constitution, adopted in 1924, which reads: "The taxes levied upon personal property for any current tax year where the same is not secured by real estate shall be based upon the tax rate levied upon real property for the preceding tax year. Nothing in this section shall be construed to prohibit

the equalization each year of the assessment on personal property in the manner now or hereafter provided by law." If these words "personal property" do not include all species mentioned in said section 3820, then what rate of taxation shall the assessor apply to oil lease properties?

. . Again, take section 3824 of the Political Code, which provides for a rebate where excess taxes have been collected, and the following language is found: "Such warrant shall state that it is for refund of excess county tax on unsecured personal property collected by the county assessor and shall state the year for which the tax was collected and the number of the assessment." If unsecured personal property does not include oil leases, then no provision for a refund has been made for an overpayment of tax on this species of property and again the constitution is violated.

But from another angle the matter seems clear. The assessor under his general duties assesses but does not collect taxes. For pursuing and obtaining taxes, where unsecured, the law intended to give him compensation. This statute allowing it is in another part and title of the Political Code from the. one on taxation. Is it reasonable to suppose, therefore, that the legislature meant to give him compensation for one duty performed under section 3820 and to deny him compensation for another duty performed thereunder by the selfsame process and in the selfsame manner? A leasehold estate is personal property. (*Jeffers* v. *Easton, Eldridge & Co.*, 113 Cal. 345 [45 Pac. 680]; *Summerville* v. *Stockton Milling Co.*, 142 Cal. 529 [76 Pac. 243]; *Guy* v. *Brennan*, 60 Cal. App. 452 [213 Pac. 265].) Why, then, may not these words in section 4290 be allowed their ordinary significance, or, if this may not be done, why may not the phrases "personal property tax," "authorized by section three thousand eight hundred twenty," be held to cover any tax collected under said section as all such taxes are in fact collected in the same manner and by the same process as taxes upon personal property?

To my mind section 4290 of the Political Code is in no way restricted by section 3617 thereof. Moreover, the plain intent of the legislature was to give the assessor six per cent of all taxes collected by him pursuant to said section 3820. The result of this decision, if it is allowed to stand, is that many of the county assessors of the state will be required to

perform difficult and exacting services without compensation. Lack of incentive will cause a loss of revenue. It is unfortunate if an unusual situation in one county causes a mistaken interpretation of a statute of general application.

I think the judgment should be affirmed.

Rehearing denied.

Preston, J., dissented.