In re **LOS ANGELES INTERNATIONAL AIRPORT HOTEL ASSOCIATES,** Debtor.

**STATE BOARD OF EQUALIZATION, OF the STATE OF CALIFORNIA,** Appellant,

v.

**LOS ANGELES INTERNATIONAL AIRPORT HOTEL ASSOCIATES,** Appellee.

BAP No. CC–95–1807.

Bankruptcy No. LA92–39324 AA.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 22, 1996.

Decided April 24, 1996.

David S. Chaney, Los Angeles, CA, Deputy Attorney General, Daniel E. Lungren, Los Angeles, CA, Attorney General, for Appellant.

Scott C. Clarkson, Torrance, CA, for Appellee.

Before HAGAN, BAUM [1], and VOLINN, Bankruptcy Judges.

## *OPINION*

HAGAN, Bankruptcy Judge:

The State Board of Equalization of the State of California (the "Board") filed a proof of claim for sales and use taxes against Los Angeles International Airport Hotel Associates ("Debtor"), a chapter 11 debtor and debtor-in-possession. The Debtor objected to the proof of claim. The bankruptcy court held in favor of the Debtor, and disallowed the Board's proof of claim in its entirety. The Board appeals. We REVERSE and REMAND.

## FACTS

The Debtor owns a hotel located in El Segundo, California (the "hotel"). Located in the vicinity of the Los Angeles International Airport, the hotel competed for business by offering complimentary beverages and breakfasts to its patrons. No separate charge was

1. Hon. Redfield T. Baum, Bankruptcy Judge for the District of Arizona, sitting by designation.

made for the beverages and breakfasts, and the hotel's room rates were competitive with other hotels in the area that did not offer complimentary beverages or breakfasts.

The Debtor filed its chapter 11 petition on July 29, 1992. On June 28, 1993, the Board submitted a proof of claim for sales and use taxes. The proof of claim sought $429,930.00 for taxes and interest owing from April 1, 1984 to July 29, 1992. This amount was alleged to be a priority claim under 11 U.S.C. § 507(a)(7). The Board additionally claimed penalties and interest of $69,468.65 as of June 30, 1993. No supporting documentation was attached to the proof of claim.

The Debtor objected to allowance of the proof of claim. The grounds for the Debtor's objection were as follows. (1) The Board incorrectly claimed as a priority taxes owing from 1984–1989, when those taxes lay outside the three-year limitation period of 11 U.S.C. § 507(a)(7)(A)(i).[2] The Board had not provided sufficient information to determine which taxes were attributable to which time period. (2) The Board incorrectly claimed penalties and interest through June 30, 1993, since the Debtor had filed bankruptcy almost one year prior to that date. (3) The complimentary beverages and breakfasts were not given for consideration, and thus did not constitute a "sale" for the purpose of California sales tax law. (4) The Debtor believed that it was providing the complimentary items as a mere incidental to the real transaction, which was the rental of rooms. (5) The Debtor never received notice of the tax, which it believed only applied to "American Plan" hotels and bed and breakfasts.

The Board filed a response to the objection, together with a declaration by Stephen C. Young in support. The Debtor moved to strike the response and declaration as untimely. The Debtor also replied to the Board's response, arguing that the informa-

tion provided was inadequate to support the proof of claim.

A hearing was held on June 21, 1995. During this hearing, the court may or may not have allowed the Board's response and declaration.[3] At the conclusion of the hearing, the court sustained the Debtor's objection to the Board's claim. An order memorializing the court's ruling was entered on July 17, 1995. The stated reasons for disallowing the Board's claim were as follows: (1) the complimentary beverages and breakfasts were not provided by the Debtor for consideration, and therefore were not subject to sales tax under California law; and (2) the Board had failed to provide documentation of the basis for its use tax claim. The Board timely appealed.

## ISSUES

The Board presents the following issues on appeal:

(1) Whether the court incorrectly ruled that the complimentary beverages and breakfasts were provided without consideration; and

(2) Whether the court improperly disallowed the use tax portion of the Board's claim for failing to provide supporting documentation.

## STANDARD OF REVIEW

■ The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo. *Wright v. Holm (In re Holm)*, 931 F.2d 620, 622 (9th Cir.1991).

## DISCUSSION

*1. The Complimentary Beverages and Breakfasts Were Subject to Sales Tax.*

■ Section 6051 of the California Revenue and Taxation Code provides for a sales

---

**2.** This subsection is currently codified at 11 U.S.C. § 507(a)(8)(A)(i).

**3.** The Debtor contends that the bankruptcy court refused to admit the response and declaration, and presented a certified copy of the transcript that supports its contention. The Board contends that transcript does not accurately disclose

the court's ruling. It submitted a "corrected" copy of the transcript, which shows the court as having admitted the response and declaration. This transcript copy is *not* certified.

It is unnecessary to resolve this issue for the purpose of this appeal. The bankruptcy court may address this question on remand.

tax on "the gross receipts of any retailer from the sale of all tangible personal property sold at retail in this state...." Cal.Rev. & Tax.Code § 6051. " 'Sale' means and includes: ... (d) The furnishing, preparing, or serving for a consideration of food, meals, or drinks." Cal.Rev. & Tax.Code § 6006(d).

■ The Debtor contends, and the bankruptcy court agreed, that the beverages and breakfasts were complimentary, and therefore were not provided to its guests for consideration. This argument must be rejected. Whether a transfer is made for consideration for the purpose of sales tax is as much a question of contract law as it is of tax law. *Beatrice Co. v. State Board of Equalization*, 6 Cal.4th 767, 774, 25 Cal.Rptr.2d 438, 443, 863 P.2d 683, 688 (1993). "Any benefit conferred ... upon the promisor, by any other person, to which the promisor is not lawfully entitled, ... as an inducement to the promisor, is a good consideration for a promise." Cal.Civ.Code § 1605; *see Beatrice*, 6 Cal.4th at 776, 25 Cal.Rptr.2d at 444, 863 P.2d at 689 ("If that agreement is consideration within the meaning of [California Revenue & Taxation Code] section 6006 and Civil Code section 1605, a taxable sale occurred.").

■ By its own admissions and evidence the Debtor has stated that the complimentary beverages and breakfasts were offered to induce travelers to rent a room at the Debtor's hotel, and that the beverages and breakfasts were offered with every room. With each room rented, therefore, the Debtor and each customer entered into a contract in which the Debtor agreed to provide the customer with a room, plus beverages and breakfast, in exchange for the customer's payment of a certain amount of money. The payment of money was legal consideration for the Debtor's duty to provide not only the room, but the beverages and breakfast. The Debtor was contractually required to provide the beverages and breakfast without charging the customer any further consideration. The Debtor therefore provided the beverages and breakfasts for consideration, and thus fell within the plain meaning of Cal.Rev. & Tax.Code § 6006(d).

The fact that the billing rendered to the customer does not show separately the sales price ... is immaterial, for the form of the billing could in no way affect the essential character of the transaction if it was in fact a sale of tangible personal property within the meaning of the act. *Kamp v. Johnson*, 15 Cal.2d 187, 99 P.2d 274, 275 (1940) (optometrist's sale of glasses to patients was taxable, even though optometrist billed medical services and glasses as a single lump sum).

This also accords with the Sales and Tax Regulations. Regulation 1603 provides in part as follows:

Tax applies to sales of meals or hot prepared food products ... furnished by ... hotels, boarding houses, ... and similar establishments whether served on or off the premises. In the case of American Plan hotels and boarding houses, a reasonable segregation must be made between the charges for rooms and the charges for meals or hot prepared food products.

Cal.Sales & Use Tax Reg. 1603(a). As the Debtor noted, an American Plan hotel provides breakfast, lunch, and dinner. There is no reason to hold that a hotel that provides three meals with the room rate is required to pay sales tax on the meals, but a hotel that provides only a single meal with the room rate is not.

Thus, the finding that the beverages and breakfasts were not provided for consideration was an erroneous finding of fact and conclusion of law.

### 2. The Complimentary Beverages and Breakfasts Were Not Merely Incidental To The True Purpose of the Contract.

It has also been suggested that the Debtor was the consumer, rather than the retailer, of the complimentary beverages and breakfasts. The basis of this argument is Regulation 1501, reproduced here in part:

Persons engaged in the business of rendering service are consumers, not retailers, of the tangible personal property which they use incidentally in rendering the service. Tax, accordingly, applies to the sale of the property to them. If in addition to rendering service they regularly sell tangible per-

sonal property to consumers, they are retailers with respect to such sales and they must obtain permits, file returns and remit tax measured by such sales. . . .

The basic distinction in determining whether a particular transaction involves a sale of tangible personal property or the transfer of tangible personal property incidental to the performance of a service is one of the true object of the contract; that is, is the real object sought by the buyer the service per se or the property produced by the service. If the true object of the contract is the service per se, the transaction is not subject to tax even though some tangible personal property is transferred. For example, a firm which performs business advisory, record keeping, payroll and tax services for small businesses and furnishes forms, binders, and other property to its clients as an incident to the rendition of its services is the consumer and not the retailer of such tangible personal property. The true object of the contract between the firm and its cliient [sic] is the performance of a service and not the furnishing of tangible personal property. Similarly, an idea may be expressed in the form of tangible personal property and that property may be transferred for a consideration from one person to another; however, the person transferring the property may still be regarded as the consumer of the property. Thus, the transfer to a publisher of an original manuscript by the author thereof for the purpose of publication is not subject to taxation. The author is the consumer of the paper on which he has recorded the text of his creation. However, the tax would apply to the sale of mere copies of an author's works or the sale of manuscripts written by other authors where the manuscript itself is of particular value as an item of tangible personal property and the purchaser's primary interest is in the physical property. Tax would also apply to the sale of artistic expressions in the form of paintings and sculptures even though the work of art may express an original idea since the purchaser desires the tangible object itself; that is, since the true object of the contract is the work of art in its physical form.

Cal.Sales & Use Tax Reg. 1501. The Debtor contends that providing complimentary beverages and breakfasts was a mere incidental to the true object of the contract, the renting of a room.

The true object test does not apply here. Regulation 1501 sets out three separate possibilities as to tax liability on a mixed sale of services and property. *California State Board of Equalization v. Advance Schools, Inc. (In re Advance Schools, Inc.)*, 2 B.R. 231, 235 (Bankr.N.D.Ill.1980). The first is where "the real object sought by the buyer [is] the service per se." Cal.Sales & Use Tax Reg. 1501; *Advance Schools*, 2 B.R. at 235. The second is where "the real object sought by the buyer . . . [is] the property produced by the service." Cal.Sales & Use Tax Reg. 1501; *Advance Schools*, 2 B.R. at 235. The third is the truly mixed transaction, where the person is both selling services and additionally is regularly selling tangible personal property to consumers. Cal.Sales & Use Tax Reg. 1501 ("If in addition to rendering service they regularly sell tangible personal property to consumers, they are retailers with respect to such sales and they must . . . file returns and remit tax measured by such sales."); *Advance Schools*, 2 B.R. at 235.

The *Advance Schools* court performed an excellent and thorough review of Regulation 1501 and the limited case law in both California and other jurisdictions, and held:

The [true object] test is appropriate where the services rendered are inseparable from the property transferred[,] that is, where the services, so to speak, find their way into the property. All the examples used in Regulation 1501 to illustrate the true object test involve transactions in which the services become an integral part of the property; e.g., the artist's skill and labor are embodied in his painting; the record keeping, tax, and similar services of a firm which performs business advisory are embodied in the forms, binders, and other property transferred during the course of the transaction. The language of the true object test as set out in Regulation 1501

supports this construction: ".... is the real object sought by the buyer the service per se or the property *produced by* the service...." (Emphasis added.)

*Advance Schools,* 2 B.R. at 235–36. "Thus, the true object test should be used where the services and the property are inseparable and is inapplicable where these two elements are distinct." 2 B.R. at 236.

In *Advance Schools,* the debtor was a correspondence school that enrolled students in California, among other places. With each course, the student received materials, "which generally included books, printed lessons, training kits, and tools, when applicable." 2 B.R. at 232. There was no separate charge to the students for these items. The Board filed a proof of claim, and the debtor objected. The court held that that portion of the tuition price attributable to the materials was severable from the services provided, and held that the debtor was liable for use taxes for those amounts. 2 B.R. at 237–38.

The present case is analogous to *Advance Schools.* The service provided by the Debtor here was overnight lodging. The beverages and breakfasts provided by the Debtor were not an inseparable part of that service. Indeed, the Debtor's admission that other hotels in the area did not provide such items reinforces that fact. The true object test does not apply, and the beverages and breakfasts were subject to sales tax.

### *Whether the Board's Use Tax Claim Was Properly Disallowed for Lack of Documentation.*

■ The bankruptcy court apparently agreed with the Debtor that the Board's claim for use taxes should be disallowed because no documentation was attached. We are not persuaded by this argument.

■ Rule [4] 3001(c) provides that "[w]hen a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim." The failure to attach such a writing, when required, does not auto-

matically invalidate the claim; it does, however, deprive the claim of prima facie validity under Rule 3001(f). *In re Stoecker,* 5 F.3d 1022, 1027–28 (7th Cir.1993); *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage),* 178 B.R. 222, 226–27 (9th Cir. BAP 1995).

■ The question is whether the Board's claim is such that documentation must be attached. By specifying that additional documentation is required only where the claim is "based on a writing," the rule plainly implies that there are claims that are not based on a writing, and that therefore do not require any additional documentation. "Base" means "the fundamental part of something: basic principle: ESSENCE, FOUNDATION, BASIS, GROUNDWORK." Webster's Third New International Dictionary (unabridged) 180 (1964) (capitalization in original, indicating synonyms). A claim is therefore based on a writing where the claim is founded upon a writing, or where a writing is a fundamental or essential part of the claim.

Here, the liability for use taxes is based not upon a writing, but upon a state statute. Cal.Rev. & Tax.Code § 6051 (sales tax); Cal. Rev. & Tax.Code § 6201 (use tax). *See Spiers v. Ohio Dep't of Natural Resources (In re Jenny Lynn Mining Co.),* 780 F.2d 585, 587 (6th Cir.), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986) (where debtor had failed to post bond as required by statute, state was not required to attach documentation). There was therefore no need for the Board to attach additional documentation of the Debtor's liability for the use tax.

■ The Debtor contends that the liability is based upon a writing, that being the assessment of the use tax by the Board. This confuses liability with enforcement. The plain language of the use tax statute indicates that the legal duty to pay the tax is created by the completion of a taxable transaction. As previously noted, a proof of claim may be entitled to prima facie validity without any documentation (*e.g.,* a claim based on

4. Unless otherwise provided, all references to "Rule" are to the respective rule of the Federal Rules of Bankruptcy Procedure.

an oral contract), even though enforcement of such a claim would require the party to obtain a judgment (and thus, a writing) setting forth the debtor's liability. The Debtor's argument would allow a debtor to escape any liability for use taxes by filing bankruptcy before the Board has actually assessed such taxes against the debtor. We reject this argument.

## CONCLUSION

The bankruptcy court incorrectly concluded that the Debtor was not liable for sales tax on the beverages and breakfasts. The court also mistakenly concluded that the Board was required to file documentation to support a claim for use taxes. However, other issues remain, including the amount due. We therefore REVERSE and REMAND to the bankruptcy court for the purpose of hearing further from the parties in the context of our disposition of this case.